274 So.2d 305

**Robert SWAIN**

v.

**STATE of Alabama.**

**7 Div. 796.**

Supreme Court of Alabama.

March 8, 1973.

## ON REMANDMENT FROM THE SUPREME COURT OF THE UNITED STATES

BLOODWORTH, Justice.

Robert Swain was convicted of rape and sentenced to death by electrocution by a jury in Talladega County, Alabama. Judgment and sentence imposing the death penalty were entered accordingly.

This court affirmed the conviction and sentence in Swain v. State, 275 Ala. 508, 156 So.2d 368 (1963), rehearing denied September 26, 1963.

The Supreme Court of the United States affirmed in 1965. Swain v. Alabama, 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759, rehearing denied 381 U.S. 921, 85 S.Ct. 1528, 14 L.Ed.2d 442.

Swain's application for writ of error coram nobis was denied by the Circuit Court of Talladega County, the trial court. This court affirmed. Swain v. State, 285 Ala. 292, 231 So.2d 737 (1970).

Swain then applied to the United States Supreme Court for certiorari. Certiorari was granted.

■ On June 29, 1972, the United States Supreme Court, 408 U.S. 936, 92 S.Ct. 2860, 33 L.Ed.2d 753, entered an order which vacated the judgment, insofar as it leaves undisturbed the death penalty imposed and remanded the case to this court for further proceedings. We received this order on July 26, 1972.

The question presented in this case is identical to that presented in Wade Hubbard v. State of Alabama [1973] 290 Ala. 118, 274 So.2d 298, decided by the court this day, except that upon a conviction for rape the punishment is death or imprisonment in the penitentiary for not less than 10 years. Title 14, § 395, Code of Alabama 1940.

The dissenting justices would have this court order a new trial for this defendant on the issue of punishment only. In effect, they contend that this solution is compelled because the United States Supreme Court mandated out the death sentence, and they reason the punishment to be imposed by a jury can vary from a minimum of ten years up to any number of years imprisonment in the penitentiary, and we cannot know what sentence a jury might impose.

■ No statutory nor common law power exists in Alabama authorizing such a bifurcated jury trial. Any attempt to construct such a system (as the dissent suggests), novel to our jurisprudence, would create problems well nigh insoluble either by this court or by the trial court to which we might remand the matter.

Is it not reasonable and logical to assume that if the jury (which tried this defendant and imposed the most extreme penalty of all—death) had been instructed that the death penalty would be an impermissible punishment, then the jury would have imposed the next most severe penalty?

In *Hubbard,* we quoted from the case of Anderson v. State, Fla., 267 So.2d 8:

"We are aware of the many problems involved, when it is necessary to transport a large number of convicted murderers from the State prison to the trial court for the purpose of sentence. The safety of the law-abiding citizen is a matter of paramount concern to the Court. Also many hours of manpower would be consumed by law enforcement officers in transporting the prisoners. Some local jail facilities are crowded and inadequate. Since the death sentence has been outlawed, there is a greater possibility of murder for the

sake of escape, particularly when the penalty to be imposed for the taking of an additional human life can be no greater than that previously imposed by the Court. The above factors are sufficient to create an exception to Rule 3.-180, F.R.Cr.P., requiring the presence of the defendants at sentencing. Their absence deprives them of no rights.

"Every court has inherent powers to do all things that are reasonably necessary for the administration of justice within the scope of its jurisdiction, subject to, or not in conflict with valid existing laws and constitutional provisions. See 5 F.L.P., Courts, § 14, and cases cited.

"Under the circumstances of these particular cases, it is our opinion that we should correct the illegal sentences previously imposed without returning the prisoners to the trial court."

It is our judgment that all of these reasons and others compel the solution we reach, which is to correct the sentence to impose a life sentence in lieu of the death penalty.

This is the conclusion reached by the Louisiana Supreme Court in State v. Williams, 263 La. 284, 268 So.2d 227; the Georgia Supreme Court in Sullivan v. State, [M.S.1972] Ga., 194 S.E.2d 410; and the North Carolina Supreme Court in State v. Waddell, 282 N.C. 431, 194 S.E.2d 19.

We agree with the Louisiana Supreme Court, which held in State v. Williams, supra:

"We construe the Mandate of the United States Supreme Court to require the imposition of a sentence other than death. * * *"

Thus, the sentence of death imposed upon the defendant, Robert Swain, is vacated and set aside. In lieu and instead thereof, the sentence is corrected to provide that the said Robert Swain be imprisoned in the State penitentiary for the term of his natural life. The clerk of this court shall furnish a certified copy of this order to the clerk of the Circuit Court of Talladega County, and the clerk of that court shall issue a commitment in this case based upon this sentence of life imprisonment and shall forward the commitment to the Board of Corrections.

A copy of this opinion shall also be transmitted to the Court of Criminal Appeals because that court acquired jurisdiction of criminal matters after the instant case was originally decided by this court.

It follows that except as to the death sentence, the judgment of the circuit court is affirmed. With regard to the death sentence, the judgment of the circuit court is modified and the sentence is reduced to life imprisonment, and as modified, the judgment is affirmed.

Modified and affirmed.

MERRILL, HARWOOD, MADDOX and JONES, JJ., concur.

HEFLIN, C. J., and COLEMAN, McCALL and FAULKNER, JJ., dissent.

HEFLIN, Chief Justice (dissenting):

The majority decision is based upon the supposition that the jury, had the death penalty not been available to them as an alternative punishment, would have sentenced the defendant to life imprisonment. With all deference, I do not believe the majority possesses such occult power. I, therefore, concur in the dissenting opinion authored by Justice Coleman, save one portion of his dissent which would allow the introduction of the transcript into evidence at the penalty trial.

I believe that our present law regarding the introduction of a transcript of a former trial should apply to the penalty trial just as it would in any other situation. Before the former testimony is admissible,

proof must be made to the trial judge that the personal attendance of the witness at court is not procurable.

The following causes of non-production of the witness are sufficient: that the witness is dead; that the witness is permanently or indefinitely absent from Alabama; that the witness cannot be found after diligent search; that the witness is in the military service in time of war; that the opponent has caused the witness to be absent; that the witness is now insane; that the witness has become disqualified by facts occurring subsequent to the former trial, and the party now offering the former testimony is not responsible for such disqualification; or that the witness now avails himself of a privilege not to testify. 2 J. McElroy, Law of Evidence in Alabama, Section 245.07(8) (2d Ed. 1962).

The introduction of the transcript into evidence at the penalty trial should further be qualified according to the best evidence rules. See 2 J. McElroy, Law of Evidence in Alabama, Section 235.02 (2d Ed. 1962).

COLEMAN, Justice (dissenting):

Robert Swain was convicted for rape and sentenced to death pursuant to Title 14, § 395, which recites:

"Any person who is guilty of the crime of rape shall, on conviction, be punished, at the discretion of the jury, by death or imprisonment in the penitentiary for not less than ten years."

This court affirmed in 1963. 275 Ala. 508, 156 So.2d 368.

The Supreme Court of the United States affirmed in 1965. Swain v. Alabama, 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759.

Swain's subsequent application for writ of error coram nobis was denied by the trial court. This court affirmed in 1970. 285 Ala. 292, 231 So.2d 737.

Swain applied to The Supreme Court of the United States for certiorari. That court granted the petition, and on July 26, 1972, issued to us a mandate which in pertinent part recites:

"WHEREAS, lately in the Supreme Court of the State of Alabama, . . . there came before you a cause between Robert Swain and the State of Alabama, No. 7 Div. 796, wherein the judgment of the said Supreme Court was duly entered on the Fifth day of February A. D. 1970, as appears by an inspection of the petition for writ of certiorari to the said Supreme Court and the response thereto.

"AND WHEREAS, in the 1971 Term, the said cause having been submitted to the SUPREME COURT OF THE UNITED STATES on the said petition for writ of certiorari and response thereto, and the Court having granted the said petition:

"ON CONSIDERATION WHEREOF, it was ordered and adjudged on June 29, 1972, by this Court that the judgment of the Supreme Court of Alabama in this cause be vacated insofar as it leaves undisturbed the death penalty imposed, and that this cause be remanded to the Supreme Court of the State of Alabama for further proceedings. See Stewart v. Massachusetts, 408 U.S. 845, 92 S.Ct. 2845, 33 L.Ed.2d 744 (1972).

"NOW, THEREFORE, THE CAUSE IS REMANDED to you in order that such proceedings may be had in the said cause, in conformity with the judgment of this Court above stated, as accord with right and justice, and the Constitution and laws of the United States, the said writ of certiorari notwithstanding."

See: Swain v. Alabama, 408 U.S. 936, 92 S.Ct. 2860, 33 L.Ed.2d 753.

The opinion of The Supreme Court of the United States in Stewart v. Massachusetts, 408 U.S. 845, 92 S.Ct. 2845, 33 L.Ed. 2d 744, recites:

"June 29, 1972. PER CURIAM.

"The appellant in this case was sentenced to death. The imposition and

carrying out of that death penalty constitutes cruel and unusual punishment in violation of the Eighth and Fourteenth Amendments. Furman v. Georgia, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972). The motion for leave to proceed *in forma pauperis* is granted. The judgment is therefore vacated insofar as it leaves undisturbed the death penalty imposed, and the case is remanded for further proceedings." 92 S.Ct. 2845.

Thus The Supreme Court of the United States has vacated the judgment against Swain in so far as the death penalty is imposed but has left standing the judgment of guilt. The question now presented is what procedure does the law require in fixing the punishment to be imposed on Swain.

In Hubbard v. State, 290 Ala. 118, 274 So.2d 298, defendant was convicted for murder in the first degree. The statute (Title 14 § 318) provides two alternatives in fixing the punishment for murder in the first degree, that is, death or imprisonment for life. When The Supreme Court of the United States struck down the death penalty, only one alternative remained, and that alternative is life imprisonment, which is clear and certain.

In the instant case, the statute also provides for two alternatives, one is death and the other is imprisonment in the penitentiary for not less than ten years. Punishment by death now being stricken by The Supreme Court of the United States, the only remaining alternative is imprisonment for not less than ten years, but the number of years to be fixed is not clear or certain by any method of reasoning of which I am advised.

As to Title 14, § 395, The Supreme Court of the United States, by its decision in Furman v. Georgia, supra, has held that part of the statute providing for punishment by death unconstitutional, and has in effect stricken from the statute the words "death or" so that the statute provides, in effect, that persons guilty of rape

". . . shall, on conviction, be punished, at the discretion of the jury, by . . . imprisonment in the penitentiary for not less than ten years." After the effect of Furman v. Georgia, the statute still provides that punishment shall be fixed by the jury.

The Supreme Court of Virginia has dealt with the problem before us in a case where the prisoner had been convicted of murder in the first degree and given a death sentence under a statute quoted by the court as follows:

"Section 18.1–22 of the Code provides:

" 'Murder of the first degree shall be punished with death, or by confinement in the penitentiary for life, or for any term not less than twenty years.' " Huggins v. Commonwealth, 213 Va. 327, 191 S.E.2d 734, 735.

Among other things the court said:

"In Virginia, when the court sits without a jury, the trial judge both tries the issue of guilt and fixes the penalty; when the accused demands a jury, the jury performs both functions. Code §§ 19.1–192, –291 and –292. The right to have the jury perform both functions is a part of the right of trial by jury.

"We do not decide the extent of our authority under Article VI, § 6 of the Virginia Constitution and Code § 19.1–288 to modify a judgment order entered upon a sentence fixed by the trial judge or a jury. We merely conclude that this case should be and it is remanded for a new trial on the issue of punishment. This accords with the procedure we approved in Snider v. Cox, 212 Va. 13, 181 S.E.2d 617 (1971) and Hodges v. Commonwealth, 213 Va. 316, 191 S.E.2d 794, this day decided." (191 S.E.2d at 736)

On the same day in another case, the Virginia court delivered a consolidated opinion in two other cases in each of which the same defendant had been found guilty of murder in the first degree. In

one case, the jury fixed defendant's punishment at 99 years in the penitentiary and in the other case at death. The court concluded that the death penalty had been rendered invalid by Furman v. Georgia, supra, and, among other things, said:

" . . . As we are compelled to follow the ruling of the Supreme Court on this question, we must now determine the procedure to be followed in this case and in other similar cases.

"We reject Hodges's contention that he is entitled to a new trial in each case on the issues of guilt and punishment. There is no error in the judgment order entered on the jury verdict in Record No. 8005 finding Hodges guilty of murder in the first degree and fixing his punishment at 99 years for the killing of Ferguson. Furthermore, there is no error in that portion of the judgment order entered on the jury verdict in Record No. 8006 finding Hodges guilty of murder in the first degree for the killing of Watson. But the portion of the judgment order sentencing him to death in accordance with the jury verdict must now be set aside.

"Without deciding whether we have authority under Article VI, § 6 of the Virginia Constitution and Code § 19.1–288 to modify the judgment order by reducing the death sentence to life imprisonment, as argued by the Attorney General, we conclude that this case (Record No. 8006) should be remanded for a new trial on the issue of punishment. We have recently approved this procedure where, 'under newly-announced constitutional principles, a felon's sentence has been set aside not because the jury that tried him could not constitutionally find him guilty, but because the jury as then constituted could not constitutionally impose the death sentence.' Snider v. Cox, 212 Va. 13, 14, 181 S.E.2d 617, 618 (1971). See also Huggins v. Commonwealth, Va., 213 Va. 327, 191 S.E.2d 734, this day decided.

"Under the Constitution of Virginia the right to trial by jury in criminal cases is guaranteed. Va.Const. art. 1, § 8. Moreover, where a criminal case is tried by a jury the punishment shall be ascertained by it. Code § 19.1–291, –292. Here the jury fixed Hodges's punishment for the Watson murder at the maximum permitted at the time of trial. Nevertheless, it would be sheer speculation for us to conclude that, if death had not then been a permissible punishment, the jury would have fixed the punishment at life imprisonment. The jury might well have agreed upon 99 years, as it did for the Ferguson murder." Hodges v. Commonwealth, 213 Va. 316, 191 S.E.2d 794, 797.

In Anderson v. State, (Fla.), 267 So.2d 8, the Supreme Court of Florida dealt with the instant question as it affected a number of prisoners convicted for rape. In pertinent part the court said:

"2. Those convicted of rape without a recommendation of mercy should be returned to the trial court so that a determination may be made as to whether the defendant should be resentenced to a term of years or life imprisonment." (267 So.2d at 10, 11)

Subsequently, the Florida court dealt with other prisoners under a death sentence, some for murder and some for rape. As pertinent, the court said:

" . . . Our decision, however, for reasons set forth at length in Anderson, supra, was for this Court to correct the illegal death sentences and—as to the 27 persons convicted of murder—this Court imposed a sentence of 'confinement in the State prison for the term of his natural life.' Only the 13 persons in that group, convicted of rape, were remanded to the circuit courts for resentencing. This was because each of those persons, if his crime was committed prior to January 1, 1972, is entitled to a hearing prior to re-sentencing; and may be sen-

tenced to imprisonment to life or for any term of years within the discretion of the Court. F.S. § 794.01 (1969), F.S.A.

" . . . . . . . . .

"2. All of the members of the class of persons under sentence of death who have been convicted *or* rape are hereby sentenced to life imprisonment. The cases of these persons, however, are remanded to their respective circuit courts for the sole purpose of further consideration of this sentence, and each of such persons may, within 90 days from this date, file a motion with the trial court for mitigation of sentence. If such a motion is filed by any person, a hearing thereon may thereafter be held under F. R.P. Rule 3.780 to determine first the date of the crime for which the defendant stands convicted. If committed after January 1, 1972, the life sentence shall not be mitigated. See Anderson v. State, *supra*. If committed prior to January 1, 1972, the Court may conduct a hearing under Rule 3.780, F.R.P., for the purpose of inquiring into all factors relevant to sentencing and shall then resentence such person to a term of life imprisonment or a term of years, in the discretion of the court. The defendant has the right to be present at any such hearing and the right to retain counsel, or have counsel appointed if indigent. These rights may be waived in writing by a defendant." In re Baker, (Fla.), 267 So.2d 331, 332, 335.

It is noted that the court proceeded to pronounce sentence of life imprisonment, apparently authorized under Florida rules of procedure, with the right of the prisoner to file a motion for mitigation of sentence.

In 1971, the Court of Criminal Appeals of Tennessee upheld the conviction of a defendant for murder in the first degree with punishment fixed at death. The court vacated the sentence of death because the requirements of Witherspoon v. Illinois, 291 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776, had not been complied with in selecting the jury. The court said:

" . . . We, therefore, again affirm the validity of this first degree murder conviction and judgment of guilt; but vacate the punishment set and remand the case for a new trial by a new jury on the issue of punishment only." Beaver v. State, (Tenn.), 475 S.W.2d 557, 561.

In People v. Speck, (September 20, 1972), 52 Ill.2d 284, 287 N.E.2d 699, the Supreme Court of Illinois, pursuant to Furman v. Georgia, supra, set aside the death penalties imposed on the defendant under eight separate indictments charging him with the murder of eight young women in the City of Chicago. The court remanded the cases to the trial court with directions to conduct a new hearing in aggravation and mitigation and resentence the defendant.

The question before us is an extraordinary one without precedent in this state. In Hubbard v. State, 290 Ala. 118, 274 So.2d 298, this court followed the course of fixing defendant's punishment at life imprisonment, which was the only punishment provided by law after the Supreme Court had declared invalid the punishment of death. In the instant case, the only punishment which can now be imposed in *Swain* is imprisonment in the penitentiary, but the length of the sentence is not fixed by law but remains in the discretion of the jury.

With the provision for the death penalty stricken, the statute under which defendant's punishment is to be fixed, Title 14, § 395, expressly provides that any person guilty of rape " . . . shall, on conviction, be punished, at the discretion of the jury, by . . . imprisonment in the penitentiary for not less than ten years." If the statute is to be followed, defendant's punishment must be fixed by the jury at imprisonment for not less than ten years. For this court to say what term a jury will fix would be sheer speculation, as is ob-

served by the Virginia Court. Hodges v. Commonwealth, supra.

In accordance with the statute, and the authorities from Virginia, Florida, Tennessee, and Illinois, I would remand the cause to the circuit court for a new trial on the issue of punishment. I am of opinion that such trial should be by jury. So much of the transcript of the testimony and proceedings in the first trial as may be necessary to show the nature of the offense charged and the circumstances under which it was committed should be permitted to be introduced in evidence, and such additional evidence as may be competent and relevant to the issue of punishment should be adduced.

Being of the opinion hereinabove expressed I must respectfully dissent.

McCALL and FAULKNER, JJ., concur.