EDWARD LEROY SMITH, APPELLANT, v. THE
STATE OF NEVADA, RESPONDENT.

No. 8901

February 17, 1977                           560 P.2d 158

[Rehearing denied March 21, 1977]

*Richard W. Young,* of Reno, for Appellant.

*Robert List,* Attorney General, Carson City; *Larry R. Hicks,* District Attorney, and *John L. Conner,* Deputy District Attorney, Washoe County, for Respondent.

## OPINION

By the Court, ZENOFF, J.:

Smith shot his ex-wife and her husband at close range with a hunting rifle. No question is raised on appeal as to his guilt. The central issue concerns the constitutionality of NRS 200.030(1)(e) as it relates to the mandatory death penalty of NRS 200.030(5). The offense of "killing more than one person as the result of a single plan, scheme or design" comes within NRS 200.030(5) which prescribes death as the penalty.

Additional claims of error are directed to the method of questioning jurors on the subject of capital punishment and the giving of certain instructions by the court. Neither warrants discussion because the statute with which we are concerned is herein declared constitutionally infirm on other grounds and

the punishment now imposed is not the death penalty; nor do we find error in the instructions given to the jury by the trial court.

We direct our attention therefore to the constitutionality of NRS 200.030(1)(e) as it applies to the death penalty provision. Its application is unconstitutional.

The collection of decisions which followed Furman v. Georgia, 408 U.S. 238 (1972), reflects the attempts by several states to retain the death penalty in a form which would be compatible with the Constitution. Those decisions are Gregg v. Georgia 428 U.S. 153, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976); Jurek v. Texas, 428 U.S. 262, 96 S.Ct. 2950, 49 L.Ed.2d 929 (1976); Proffit v. Florida, 428 U.S. 242, 96 S.Ct. 2960, 49 L.Ed.2d 913 (1976); Woodson v. North Carolina, 428 U.S. 280, 96 S.Ct. 2978, 49 L.Ed.2d 944 (1976); and Roberts v. Louisiana, 428 U.S. 325, 96 S.Ct. 3001, 49 L.Ed. 2d 974 (1976). The statutes of the first three, Georgia, Texas and Florida, were upheld but those of North Carolina and Louisiana were held violative of the Constitution.

The plurality of the U.S. Supreme Court seems to hold that controlled discretion on the part of the sentencing authority is not only permissible but essential under the 8th Amendment. The court states: "Furman mandates that where discretion is afforded a sentencing body on a matter so grave as the determination of whether a human life should be taken or spared, that discretion must be suitably directed and limited so as to minimize the risk of wholly arbitrary and capricious action." Gregg, 428 U.S. 189, 96 S.Ct. at 2932, 49 L.Ed.2d at 883.

The statutes of Georgia, Texas and Florida that met the approval of the highest court of our land each comprised a statutory scheme whereby a separate hearing for the purpose of deciding the punishment was provided. In the affirmance of these schemes, their ability to take into consideration mitigating circumstances, not only those surrounding the offense but the character and propensities of the offender as well, was favorably noted. The court held that even the imposition of the death penalty is permissible if these factors are adequately considered within the sentencing procedures.

As previously stated, Nevada's 200.030(5) mandates punishment by death for each person convicted under 200.030(1). The U.S. Supreme Court struck down similar statutes of North Carolina (Woodson v. North Carolina, supra) and Louisiana (Roberts v. Louisiana, supra). In short, more than simply the limitation of the imposition of the death penalty to certain

narrow, specific situations of murder is necessary to meet the standards of the Furman and Gregg cases. The statutes of the three states that were upheld provided for a bifurcated system of, first, a trial on guilt or innocence and then if guilt were found a separate penalty hearing.

"A jury", the court said, "must be allowed to consider on the basis of all relevant evidence not only why a death sentence should be imposed, but also why it should not be imposed." 428 U.S. at 271, 96 S.Ct. at 2956, 49 L.Ed.2d at 938. Speaking to the types of specific information which might be considered, in *Jurek* the court noted, quoting from the opinion of the Texas Court of Criminal Appeals, that " '[i]n determining the likelihood that the defendant would be a continuing threat to society, the jury could consider whether the defendant had a significant criminal record. It could consider the range and severity of his prior criminal conduct. It could look further to the age of the defendant and whether or not at the time of the commission of the offense he was acting under duress or under the domination of another. It could also consider whether the defendant was under an extreme form of mental or emotional pressure, something less, perhaps than insanity, but more than the emotions of the average man, however inflamed, could withstand.' 522 S.W.2d at 939–940." 428 U.S. at 272, 273, 96 S.Ct. at 2956–2957, 49 L.Ed.2d at 939.

It can be concluded that definite and affirmative consideration of various mitigating factors must be undertaken in sentencing to satisfy constitutional standards of sentencing to death. For its failure to provide such consideration, we therefore declare NRS 200.030(5) as it mandatorily applies to NRS 200.030(1)(e) unconstitutional.

The sentence of death is vacated and the penalty imposed upon Edward Leroy Smith is life imprisonment without possibility of parole, for each murder, to be served consecutively. See Anderson v. State, 90 Nev. 385, 528 P.2d 1023 (1974).

Affirmed as modified.

BATJER, C. J., and MOWBRAY, THOMPSON, and GUNDERSON, JJ., concur.